***********
This matter was reviewed by the Full Commission based upon the record of the proceedings before Deputy Commissioner Stephenson along with the briefs and arguments on appeal. The appealing party has shown good ground to receive further evidence or to amend the prior Opinion and Award. Accordingly, the Full Commission adopts and affirms, with some MODIFICATION, the Deputy Commissioner's holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On 2 January 1998, an employment relationship existed between the plaintiff-employee and defendant-employer.
3. On 2 January 1998, defendant was self-insured with Trigon Administrators as the Servicing Agent.
4. The plaintiff's average weekly wage on 2 January 1998 was $337.48, yielding a stipulated compensation rate of $224.99.
5. Plaintiff received $1,300.00 in short-term disability benefits from 18 June 1998 through 16 September 1998. The plaintiff also received $342.86 in short-term disability from 21 April 1999 through 13 May 1999.
6. The following Industrial Commission Forms are admitted into evidence as Stipulated Exhibit #2: Form 18, dated 10 January 1998, and Form 18 dated 8 April 1999; Forms 19, 22, 33, 33R and Executive Secretary Tracey Weaver's 17 June 1999 Order.
7. Plaintiff's 4 February 1998 Recorded Statement is admitted into evidence as Stipulated Exhibit #3.
8. Broyhill and Trigon Forms and correspondence are admitted into evidence as Stipulated Exhibit #4.
9. Plaintiff's following medical records are admitted into evidence as Stipulated Exhibit #5:
a) Hart Industrial Clinic;
b) Dr. William Long, Conover Family Practice;
c) Dr. Larry Boyles, Neurologist;
d) Frye Regional Medical Center;
e) Frye Physical Therapy;
f) Dr. Mark Marchese, Piedmont Neurosurgery;
g) Dr. Robert Yapundich, Neurology Associates;
h) Dr. Andrea Stutesman, Rehabilitation Specialists;
 i) Dr. William Pekman/Dr. P. E. Brown, Hickory Orthopaedic Center;
 j) Dr. John dePerczel, Carolina Orthopaedic Specialists; and,
k) Catawba Memorial Hospital.
10. A 15 May 1999 letter to Tracey Weaver, Executive Secretary, from Martha Surles is admitted into evidence as Stipulated Exhibit #6.
11. The depositions of Dr. Robert Hart, Dr. John dePerczel, Dr. P. E. Brown and Dr. Andrea Stutesman, with exhibits, are admitted into evidence.
12. Defendant stipulated during the hearing before the Deputy Commissioner that plaintiff sustained a compensable injury on 2 January 1998. The issues to be determined are what benefits are due plaintiff as a result of her 2 January 1998 injury and to what extent is her disability.
 ***********
Based upon the evidence of record, the Full Commission enters the following:
 FINDINGS OF FACT
1. On 2 January 1998 plaintiff was a forty-eight year old female employed by defendant in the furniture construction business. Plaintiff's duties included "worm-holing" furniture, or putting holes in furniture to make it appear old and as if it has been eaten by worms.
2. On 2 January 1998 plaintiff was performing her regular duties at defendant when she fell off the platform on which she was standing. This platform was about two feet in height. The plaintiff caught her heel on two nails that threw her backwards, causing her left hip to hit the floor and her right leg stayed on the platform.
3. As a result of her work-related fall on 2 January 1998, defendant gave her ice packs and ibuprofen. Plaintiff's primary complaint was her left hip. Defendant sent plaintiff to Hart Industrial Clinic for treatment on 5 January 1998. By that date plaintiff's left arm was bruised underneath from her elbow to her armpit.
4. Dr. Hart released plaintiff to return to work with no lifting over five pounds and no bending. Plaintiff was also prescribed naprosyn. Cybil Lyons, defendant's personnel manager, did not allow plaintiff to work while taking naprosyn.
5. Plaintiff was out of work as a result of taking naprosyn from 6 January 1998 through 14 January 1998.
6. On 14 January 1998 Dr. Hart changed plaintiff's medication to ibuprofen when plaintiff complained the naprosyn made her drowsy. On 14 January 1998 defendant sent plaintiff a written request to report to light duty. Although plaintiff received this letter, she did not respond. Plaintiff was physically capable of returning to work when light duty within her restrictions was made available to her.
7. On 2 February 1998 plaintiff was referred to Dr. Marchese. Dr. Marchese noted some degenerative changes in plaintiff's spine but the objective examination was not consistent with plaintiff's magnified responses. No evidence of an acute injury was found. Plaintiff was not motivated to return to work when Dr. Marchese suggested light duty. Dr. Marchese did not excuse plaintiff from work.
8. Plaintiff's family doctor referred plaintiff to Dr. Robert Yapundich, a neurologist, in March 1998. As a result of plaintiff's 2 January 1998 fall and plaintiff's subsequent back problems, Dr. Yapundich wrote plaintiff out of work from 7 April 1998 through 22 April 1998.
9. On 24 April 1998 plaintiff was involved in a motor vehicular accident where another car ran a stop sign and hit plaintiff's vehicle broadside. This accident caused reinjury to plaintiff.
10. As a result of plaintiff's 24 April 1998 motor vehicle accident, plaintiff had increased minimal tenderness to her back, primarily in the muscles and joints. No specific neurologic changes were noted.
11. Dr. Stutesman continued to treat plaintiff into May 1998, and plaintiff continued physical therapy. The bicycle exercises caused plaintiff some knee aggravation. However, her right ankle, low back and right hip pain had improved. By 27 May 1998 plaintiff had some remaining tenderness around the right sacroiliac joint, but there were no radicular signs upon examination.
12. As a result of plaintiff's 2 January 1998 fall and resultant back problems, Dr. Stutesman recommended that plaintiff undergo a bunionectomy. Plaintiff sought treatment from Dr. Paul Brown. On 11 June 1998 plaintiff underwent surgery for her right foot to remove the severe bunion and hallux valgus deformity. On 27 August 1998 plaintiff underwent a bunionectomy on her left foot. As a result of these two foot surgeries, plaintiff was excused from work from 11 June 1998 through 1 November 1998. On 1 November 1998, Dr. Brown released plaintiff to return to work with no restrictions.
13. The greater weight of the medical evidence proves that, given plaintiff's preexisting bunion condition, taken with the compensable back injury, plaintiff's two foot surgeries and subsequent disability were a direct and natural consequence of plaintiff's compensable injury of 2 January 1998.
14. On 17 February 1999 plaintiff sought treatment from Dr. dePerczel. Plaintiff described back pain since the work-related injury on 2 January 1998 but also reported severe back, hip and leg pain since the 24 April 1998 automobile accident. Dr. dePerczel opined plaintiff's back problems originated with the injury in January 1998 but were aggravated by the subsequent car accident. Dr. dePerczel acknowledged any causation opinion was based on the history rendered by plaintiff. The greater weight of the evidence shows that the five percent (5%) permanent rating assigned by Dr. dePerczel is not causally related to plaintiff's compensable injury.
15. Plaintiff worked restricted duty with defendant from 27 May 1998 through 10 June 1998, and 2 November 1998 through 7 January 1999. This restricted duty is more likely resulting from the 24 April 1998 car accident, rather than the 2 January 1998 compensable injury. Plaintiff returned to full-time duty effective 8 January 1999 at the same or greater wages than she had earned prior to 2 January 1998.
16. Plaintiff received a total of $1,642.6 in short-term disability benefits from a company-funded plan for the dates 18 June 1998 through 16 September 1998 and 21 April 1999 through 13 May 1999.
 ***********
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 2 January 1998 plaintiff sustained an injury arising out of and in the course of her employment with defendant-employer. G.S. §97-2(6).
2. As a result of the compensable injury, plaintiff was unable to work or earn wages from 2 January 1998 through 14 January 1998 and is entitled to disability compensation at a rate of $224.99 per week from 2 January 1998 through 14 January 1998. G.S. § 97-29.
3. As a result of the compensable injury, plaintiff was unable to work or earn wages from 7 April 1998 through 22 April 1998 and is entitled to disability compensation at a rate of $224.99 per week from 7 April 1998 through 22 April 1998. G.S. § 97-29.
4. As a result of the compensable injury, and resulting related foot surgeries, plaintiff was unable to work or earn wages from 11 June 1998 through 1 November 1998 and is entitled to disability compensation at a rate of $224.99 per week from 11 June 1998 through 1 November 1998. G.S. § 97-29.
5. Subject to the limitations of G.S. § 97-25.1, plaintiff is entitled to payment of all medical bills incurred as a result of her compensable injury on 2 January 1998 that are reasonably necessary to affect a cure or give relief. Plaintiff is entitled to the treatment and surgeries rendered by Dr Brown. G.S. § 97-25.
6. Plaintiff is not entitled to attorney fees from defendant. G.S. § 97-88.
7. Defendant is entitled to a credit in the amount of $1,642.60 for short-term disability benefits paid to plaintiff from a company-funded disability plan. G.S. § 97-42.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay plaintiff disability compensation at a rate of $224.99 per week for the period from 2 January 1998 through 14 January 1998, subject to the credit owed defendant.
2. Defendant shall pay plaintiff disability compensation at a rate of $224.99 per week for the period from 7 April 1998 through 22 April 1998, subject to the credit owed defendant.
3. Defendant shall pay plaintiff disability compensation at a rate of $224.99 per week for the period from 11 June 1998 through 1 November 1998, subject to the credit owed defendant.
4. Defendant shall pay all medical expenses for treatment related to plaintiff's 2 January 1998 compensable injury, including Dr. Brown's treatment and surgeries, which is necessary to affect a cure or give relief.
5. An attorney's fee in the amount of 25% of the compensation awarded is hereby approved for plaintiff's counsel, which fee shall be deducted from the award and paid directly to counsel.
6. Defendant shall pay the costs of this appeal.
 S/_____________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/_____________________________ DIANNE C. SELLERS COMMISSIONER
S/_____________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER